# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3418 | **DATE** | March 31, 2004 |
| **CASE TITLE** | Bedrossian v.Northwestern Memorial Hospital | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   The Hospital's motion to dismiss Counts II and V of the complaint [16-1] is granted.  As against the Hospital, Count II is dismissed with prejudice and Count V is dismissed without prejudice.   The motion of NMFF and Doctors Reddy, Warren, and Nayar to dismiss Counts II, III, V, VI, and VII [18-1] is granted.  As against NMFF, Counts V, VI, and VII are dismissed without prejudice.  As against the Doctors, Counts II and III are dismissed with prejudice and Count V is dismissed without prejudice.  Plaintiff is given until April 16, 2004 to replead Counts V, VI, and VII if he can allege the required elements of these claims against the relevant defendants, as outlined _supra_. ENTER MEMORANDUM OPINION.

(11)    [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| x | Notices MAILED by judge's staff. | | 4· 01· 04 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | 6-1 | 37 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | 2004 MAR 31 PM 4:00 | date mailed notice | |
| KAM | courtroom deputy's initials | FILED Date/time received in central Clerk's Office | KAM | mailing deputy initials |

(Reserved for use by the Court)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CARLOS BEDROSSIAN, M.D.,            )
                                    )
            Plaintiff,              )
                                    )
        v.                          )       No. 03 C 3418
                                    )
NORTHWESTERN MEMORIAL HOSPITAL      )
et al.,                             )
                                    )
            Defendants.             )

### MEMORANDUM OPINION

Two motions are before the court: (1) the motion of Northwestern Memorial Hospital to dismiss Counts II and V of the complaint; and (2) the motion of Northwestern Medical Faculty Foundation, Inc., Janardan Reddy, M.D., John Warren, M.D., and Ritu Nayar, M.D. to dismiss Counts II, III, V, VI, and VII of the complaint. For the reasons explained below, the motions are granted.

### BACKGROUND

Plaintiff Carlos Bedrossian, M.D. ("Dr. Bedrossian") brings this action against Northwestern Memorial Hospital (the "Hospital"); Northwestern University's Feinberg School of Medicine (the "School"); Northwestern Medical Faculty Foundation, Inc. ("NMFF"); the McGaw Medical Center of Northwestern University; and three affiliated physicians, Janardan Reddy, M.D. ("Dr. Reddy"),

37

John Warren, M.D. ("Dr. Warren"), and Ritu Nayar, M.D. ("Dr. Nayar"). Dr. Bedrossian alleges that he was demoted from his position and that his employment contract was then terminated in retaliation for two things: (1) Dr. Bedrossian's participation in the United States Air Force Reserve;[1] and (2) his cooperation with the United States Department of Justice regarding an investigation of improper billing practices at the Hospital and NMFF.

The following facts, taken from plaintiff's complaint, are accepted as true for purposes of this motion. In 1997, Dr. Bedrossian "entered into an employment relationship for a faculty position at [the School], an employment relationship with [NMFF] and a medical staff directorship at [the Hospital]." The terms of his contract, faculty appointment, and administrative responsibilities at the Hospital were set forth in correspondence between Drs. Bedrossian and Reddy. (Complaint, ¶ 12.)

Dr. Reddy's letter of March 28, 1997 (the "March 28 letter") stated, inter alia: "It is with great pleasure that I offer you a faculty position at the rank of Professor (clinician track) in the Department of Pathology at [the School] beginning September 1, 1997. This is a full-time, 11 month, non-tenure eligible, 5 year renewable appointment. . . As we agreed, you will be the Director of [sic] Cytopathology Division [of the Department of Pathology]."

_____

[1] The complaint states that "Dr. Bedrossian is a Colonel in the Medical Corps of the U.S. Air Force Reserve." (Complaint, ¶ 4.)

The March 28 letter also provided that Dr. Bedrossian's salary would be "$170,000 per annum plus the usual fringe benefits extended to faculty such as membership in the Northwestern Medical Faculty Foundation (NMFF) with its retirement plan, as well as major medical and dental insurance, and a sum of $2500 each year to support travel, membership dues and journal subscriptions as you see fit." (Id., Group Ex. A.)

The letters between Drs. Bedrossian and Reddy contain only very brief references to Dr. Bedrossian's Air Force Reserve obligations. Dr. Bedrossian's letter of March 25, 1997 states: "My understanding is that . . . [m]y seven-week military service towards the U.S. Air Force reserve will not be counted as vacation." Dr. Reddy's March 28 letter states: "As we discussed, you will have to participate actively in diagnostic service, and with three members in the division, I anticipate that it will require at least 50% of your effort in this area. The remaining 50% of effort should enable you to devote adequate time for administrative responsibilities, scholarly activities, and the three to four week time for the U.S. Air Force Reserve." (Id., Group Ex. A.)

On August 1, 1997, Dr. Bedrossian received a letter from the Vice Dean of the School. (Id., ¶ 13 & Ex. B.) The letter provided in pertinent part:

Dear Dr. Bedrossian:

I am pleased to provide you an official offer of appointment in the Northwestern University Medical School. Your appointment is:

Appointment:     Full-time
Months:          11
Track:           Clinician
Tenure Status:   Non-tenure eligible
Term:            September 1, 1997 through August 31, 2002
Rank:            Professor of Pathology

The salary for this position will be recommended on an annual basis by your department chairman as noted in the Medical School Faculty Handbook.

Service on the faculty at Northwestern includes teaching as assigned by your department chairman, research, and the performance of assigned administrative duties. These duties of the faculty, as outlined in the University and Medical School Faculty Handbooks, help to form the basis on which your performance will be evaluated.

. . .

Copies of the University and Medical School Faculty Handbooks are enclosed. These documents contain important information and conditions that pertain to your faculty position at Northwestern.

. . .

Please indicate receipt of the Faculty Handbooks and your intention to accept this appointment, as specified above, by signing and returning the original of this letter to the Faculty Administration Office . . . .

(Id., Ex. B.) Dr. Bedrossian accepted the appointment, and his signature appears on the letter.

In the course of his employment, Dr. Bedrossian worked with defendants Drs. Reddy, Warren, and Nayar in the Department of Pathology (the "Department"). At the time of the complaint, Dr.

Reddy was the Chairman of the Department, and Dr. Warren was the Vice-Chairman. Dr. Nayar was an Assistant Professor of Pathology and replaced Dr. Bedrossian as the Clinical Director of the Cytopathology Division of the Department in June 2001. (Id., ¶¶ 9-11.)

Dr. Bedrossian alleges that from April 2000 until August 2002, Dr. Reddy "harassed" him about days Dr. Bedrossian had taken as military leave "by routinely changing policies concerning military leave, and by threatening to deduct the days Dr. Bedrossian had already used for military leave from his paycheck." (Id., ¶ 26.) In 2001 and 2002, Dr. Nayar "harassed" Dr. Bedrossian with respect to his military leave by "imposing an excessive, exhausting and unsafe work schedule prior to scheduled dates of military leave and placing Dr. Bedrossian on the draft schedule for the days for which he had already been granted military leave." (Id., ¶ 23.) In 2001 and 2002, "despite maintaining the same level of production as in 1997 through 2000," Dr. Bedrossian did not receive bonuses; previously he had received bonuses of up to $30,000 from 1997 through 2000. (Id., ¶ 22.)

Dr. Bedrossian also claims that, beginning in April 2001, Drs. Reddy, Warren, and Nayar "began a policy of harassing Dr. Bedrossian with Dr. Reddy expressly stating at departmental meetings in Spring of 2001, that he and Dr. Nayar intended to force Dr. Bedrossian to leave the University." Dr. Nayar restricted and

obstructed Dr. Bedrossian's scholarly research and refused to provide performance feedback or information that Dr. Bedrossian needed to perform his job. Dr. Reddy strictly enforced Department requirements against Dr. Bedrossian and failed to enforce them against other physicians. (Id., ¶ 19.)

On April 23, 2001, Drs. Reddy and Warren told Dr. Bedrossian that he would no longer be Director of the Cytopathology Division because Dr. Bedrossian "was spending too much time on military 'vacations.'" (Id., ¶ 16.) A month later, Dr. Reddy offered Dr. Bedrossian the position of Associate Chairman of the Department, but rescinded the offer after Dr. Bedrossian accepted it. (Id., ¶ 17.) On June 4, 2001, Drs. Reddy and Warren announced that the new Director of Cytopathology would be Dr. Nayar. (Id., ¶ 18.)

On June 7, Dr. Reddy "informed Dr. Bedrossian that he was no longer to be involved in any currently pending Pathology Department internal investigations concerning improper billing practices at [the Hospital and NMFF], and he ordered other physicians at the [School] to no longer discuss the propriety of billing issues with Dr. Bedrossian." (Id., ¶ 20.)

According to Dr. Bedrossian, his scholarly research and teaching materials, which he had accumulated for over thirty years and which he values at more than $1.2 million, were destroyed on June 8, 2001 by a salvage company hired by the Hospital and the School. Equipment and materials stored in the same room that

belonged to other physicians were not destroyed. Dr. Bedrossian lost rare cancer specimens and is now unable to re-examine them for various purposes, including obtaining future grants relating to research involving those specimens. (Id., ¶ 21.)

On August 21, 2001, Dr. Bedrossian filed a qui tam action pursuant to 31 U.S.C. § 3730, alleging that the Hospital and NMFF's billing practices violated the Federal False Claims Act, 31 U.S.C. 3729 et seq. (Id., ¶ 24.)

A year later, on August 29, 2002, Dr. Bedrossian received a letter from Dr. Reddy, which stated as follows:

> Dear Dr. Bedrossian:
>
> As you know from Dr. James Young's August 27, 2002 letter, your faculty appointment at the non-tenure-eligible rank of Professor of Pathology has been approved. Your new term of appointment is September 1, 2002 through August 31, 2003. For career planning purposes, I want you to be aware that your appointment at Northwestern University will not be renewed beyond August 31, 2003.

(Id., Ex. D.) Dr. Bedrossian's last day of employment was August 31, 2003.

Dr. Bedrossian filed the instant action on May 21, 2003, before his employment was actually terminated but after he had received Dr. Reddy's letter of August 29, 2002. The complaint alleges the following claims: discrimination and reprisals against a member of a uniformed service in violation of 38 U.S.C. § 4311 (Count I); violation of the False Claims Act's anti-retaliation provision, 31 U.S.C. § 3730(h) (Count II); breach of contract

(Count III); malicious destruction of property (Count IV); intentional infliction of emotional distress (Count V); negligent destruction of property (Count VI); and grossly negligent destruction of property (Count VII).

On August 26, 2003, Dr. Bedrossian moved for a temporary restraining order and for a preliminary injunction. We denied the motion for a temporary restraining order on August 27, and we denied the motion for a preliminary injunction on September 15. Plaintiff has appealed the denial of a preliminary injunction; that appeal is pending.[2]

Defendants have filed motions to dismiss certain counts of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Hospital moves to dismiss Counts II and V. Drs. Reddy, Warren, and Nayar (the "Doctors") move to dismiss Counts II, III, and V. NMFF moves to dismiss Counts V, VI, and VII. Counts I and IV of the complaint are therefore not at issue at this juncture.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). Dismissal is appropriate only if "'it is clear that no relief could be granted

---

[2] An appeal from an order denying a preliminary injunction does not divest this court of jurisdiction to proceed with the action on the merits. See Shevlin v. Schewe, 809 F.2d 447, 451 (7th Cir. 1987).

under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

## A. **Count II - Retaliation in Violation of the False Claims Act**

The anti-retaliation (or "whistleblower") provision of the False Claims Act, 31 U.S.C. § 3730(h), provides that "[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole." The Doctors move to dismiss this claim and argue that they do not constitute Dr. Bedrossian's "employer(s)" for purposes of the False Claims Act. In response, plaintiff concedes that Count II should be dismissed against the Doctors.

The Hospital also moves to dismiss this claim on the same ground, asserting that the complaint does not allege sufficient facts that the Hospital could be found to have been Dr. Bedrossian's employer. The Hospital points to paragraphs 8 and 12 of the complaint:

> 8. There is a relationship between [the Hospital, the School, and NMFF], where <u>Professors at [the School] are employees of [NMFF], and these Professors also serve as the medical staff [of] [the Hospital]</u>. [NMFF] operates as the medical practice group, which bills for the clinical

services performed by [School] faculty at [the Hospital]
and compensates the physicians.

12. In 1997, Carlos Bedrossian, M.D., entered into an
employment relationship for a faculty position at [the
School], an employment relationship with [NMFF] and a
medical staff directorship at [the Hospital].

(Complaint, ¶¶ 8, 12 (emphasis added).) According to the Hospital,
plaintiff acknowledges that he was not employed by the Hospital by
describing the relationship as a "medical staff directorship," in
contrast with the alleged "employment relationship(s)" with the
School and NMFF.

Plaintiff opposes the Hospital's motion. He argues that
"[w]hile theoretically [the School, NMFF, and the Hospital] are
separate institutions, where the same chain of command exists for
the three entities and there is a financial inter-relationship as
well, [the Hospital] is Dr. Bedrossian's employer to the same
degree as the [School and NMFF]." (Response at 6-7.) We reject
this "control and inter-relationship" argument because it is wholly
unsupported by authority. The complaint expressly stops short of
alleging that the Hospital was Dr. Bedrossian's employer, or
alleging any facts from which it could be found that the Hospital
was his employer.

Dr. Bedrossian also contends that the complaint adequately
alleges that the Hospital was his employer "because the Hospital
bills the federal government for the allowed costs associated with
their [sic] Graduate Medical Education program, which includes that

portion of teaching physician's salaries, and pays these and additional funds to [NMFF] to be paid as a portion of the physician's salaries." (Response at 3.) First, we note that these allegations are not pled in the complaint. Even if they were, we are not convinced that they would sufficiently state a claim against the Hospital. Plaintiff fails to support this argument with any apposite authority. Accordingly, Count II must be dismissed as against the Hospital.

## B.    **Count III - Breach of Contract**

The Doctors move to dismiss Count III, which alleges breach of contract, on the ground that they were not parties to any contract with Dr. Bedrossian. Dr. Bedrossian deems this motion "irrelevant" because, in his view, he "does not allege any contract with any individual Defendants nor does he seek any monetary damages from them." (Response at 7.) However, the complaint does not clearly delineate against which defendants this claim is asserted. Therefore, to the extent (if any) that Count III is alleged against the Doctors, it is dismissed with prejudice.

## C.    **Count V - Intentional Infliction of Emotional Distress**

The Hospital, the Doctors, and NMFF move to dismiss plaintiff's intentional infliction of emotional distress ("IIED") claim. The elements of an intentional infliction of emotional distress claim under Illinois law are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intent for his

conduct to inflict severe emotional distress or knowledge that there was a high probability that his conduct would do so; and (3) severe emotional distress caused by the defendant's conduct. See Rekosh v. Parks, 735 N.E.2d 765, 772 (Ill. App. Ct. 2000). Defendants assert that (1) there is no conduct alleged as to NMFF that forms the basis of this claim; (2) the conduct that is alleged is not "outrageous"; (3) and the complaint fails to allege intent. Plaintiff fails to respond to defendants' first and third arguments.

In Count V, plaintiff alleges that "[t]he actions of the Defendants, as set forth in paragraphs 16-27, as well as other actions to harass Dr. Bedrossian between April, 2001 and the present, were intentional, outrageous and inflicted severe emotional distress upon the Plaintiff." (Complaint, ¶ 42.) Defendants are correct that the allegations in paragraphs 16-27 focus on the Doctors' alleged conduct and not any particular conduct of NMFF or the Hospital. There is simply no conduct alleged, let alone intent, as to NMFF or the Hospital. Moreover, there are no allegations setting forth a basis for vicarious liability.

There is plenty of conduct alleged as to the Doctors.[3] But there is no allegation that they intended for their conduct to inflict severe emotional distress or that they knew there was a high probability that their conduct would do so. The allegation that their "actions . . . were intentional" is not equivalent.

Count V will be dismissed without prejudice. If plaintiff wishes to replead this claim, he must allege sufficient conduct or an adequate basis for liability, and he must allege the requisite intent.

## D. Counts VI & VII - Negligence & Gross Negligence

NMFF contends that Counts VI and VII should be dismissed as against NMFF because the allegations of those counts only go to the School and the Hospital. Counts VI and VII allege that the School and the Hospital "hired a salvage company to destroy contents[4] not being moved to a new pavilion in summer of 2001," that the School, the Hospital, and the Doctors "had a duty to inform Dr. Bedrossian of the date upon which materials would be destroyed and to inform Dr. Bedrossian of the procedure for keeping materials he wished to

---

[3] We do not agree with defendants that dismissal is warranted because the conduct alleged is not sufficiently outrageous. Under the liberal federal system of notice pleading, plaintiff is not obliged to allege every action that he claims inflicted emotional distress. See Cook v. Winfrey, 141 F.3d 322, 331 (7th Cir. 1998). Plaintiff specifically refers in Count V to "other actions to harass" him. In addition, at this stage, plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint. See Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994).

[4] Contents of what, this sentence does not specify. A review of other paragraphs of the complaint reveals that the contents of Dr. Bedrossian's laboratory at the Hospital were allegedly destroyed.

save," and that "the salvage company under the direction and control of the Defendants destroyed Dr. Bedrossian's research and teaching materials." (Complaint, ¶¶ 45-47, 49-51.)

In response, plaintiff argues that NMFF could be found to be vicariously liable for the Doctors' actions. The problem, however, is that plaintiff simply does not adequately plead, or even attempt to plead, vicarious liability in the complaint. Counts VI and VII therefore will be dismissed without prejudice as against NMFF. If plaintiff wishes to replead this claim as against NMFF, he must allege an adequate basis for vicarious liability.

## CONCLUSION

For the foregoing reasons, the Hospital's motion to dismiss Counts II and V of the complaint is granted. As against the Hospital, Count II is dismissed with prejudice and Count V is dismissed without prejudice.

The motion of NMFF and Doctors Reddy, Warren, and Nayar to dismiss Counts II, III, V, VI, and VI is granted. As against NMFF, Counts V, VI, and VII are dismissed without prejudice. As against the Doctors, Counts II and III are dismissed with prejudice and Count V is dismissed without prejudice.

Plaintiff is given until April 16, 2004 to replead Counts V, VI, and VII if he can allege the required elements of these claims against the relevant defendants, as outlined supra.

DATE:        March 31, 2004

ENTER:

John F. Grady, United States District Judge